FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ DEC 07 2005 ★
BROOKLYN OFFICE

ORIGINAL
D&F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CARL B. STRAKER,

       Plaintiff,

  -against-

METROPOLITAN TRANSIT AUTHORITY,
NEW YORK CITY TRANSIT AUTHORITY,
and TRANSPORT WORKERS UNION OF
GREATER NEW YORK, LOCAL 100,

       Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 03-CV-1756 (FB) (KAM)

*Appearances:*
*For the Plaintiff:*
REGINA FELTON, ESQ.
Felton & Associates
1371 Fulton Street, 2nd Floor
Brooklyn, NY 11216

*For Defendant New York City Transit Authority:*
VICTOR MITCHELL LEVY, ESQ.
New York City Transit Authority
130 Livingston Street
Brooklyn, NY 11201

*For Defendant Transport Workers Union of Greater New York, Local 100:*
ANDREA LEE LAZAROW, ESQ.
STUART LICHTEN, ESQ.
Kennedy, Schwartz & Cure, P.C.
113 University Place, 7th Floor
New York, NY 10024

**BLOCK, Senior District Judge:**

      Plaintiff, Carl Straker ("Straker"), claims that defendant New York City Transit Authority ("NYCTA") discriminated against him on the basis of his race and disability when it deemed his failure to provide a urine sample for drug testing a "refusal" and terminated his employment based on that refusal. He also claims that his union, defendant Transport Workers Union of Greater New York, Local 100 ("TWU"), breached

its duty of fair representation ("DFR") when the union representative on the arbitration panel reviewing the termination decision allegedly visited a witness and persuaded him not to cooperate on Straker's behalf.[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), NYCTA moves to dismiss; pursuant to Federal Rule of Civil Procedure 12(c), TWU moves for judgment on the pleadings.

I.

Straker filed a nine-count complaint on April 10, 2003; he later filed an Amended Complaint consisting of five counts. Count I alleged that NYCTA "violated 42 U.S.C. § 1983 in that it deprived plaintiff of his job without procedural due process[.]" Am. Compl. at 20. Count II alleged that NYCTA, "together with physicians Harris M. Naglar, M.D. and Avram M. Nemetz, M.D.," violated 42 U.S.C. § 1985(3) by "engag[ing] in conduct calculated to support a finding that plaintiff 'refused' to render a urine sample" because of Straker's race. *Id.* at 21. Count III alleged that Straker "was injured in that he was deprived of employment and its emoluments, for a period of ten months," in violation of 42 U.S.C. § 1983." *Id.* at 22. Count IV alleged that Straker "was discharged under the pretext that he refused to give a urine specimen but was discharged because of his handicap," in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l*. *Id.* Count V alleged that a TWU representative, James Mahoney, approached one of Straker's physicians and "instruct[ed] the doctor not to cooperate" with Straker during the

---

[1]Straker also sued "Metropolitan Transit Authority," a non-existent entity, but did not perfect service on that defendant (or on the Metropolitan *Transportation* Authority, the entity Straker presumably intended to sue); as a result, Metropolitan Transit Authority has been dismissed as a party. *See Straker v. Metropolitan Transit Auth.*, 333 F. Supp. 2d 91, 94 (E.D.N.Y. 2004) ("*Straker I*").

arbitration proceedings, *id.* ¶ 87, in violation of "federal labor law." *Id.* at 23.

NYCTA and TWU moved to dismiss the Amended Complaint. The Court decided those motions in *Straker I. See* 333 F. Supp. 2d at 94. Count I was dismissed on the ground that Straker had failed to allege a protected property interest and, in any event, had received due process. *See id.* at 97. With regard to Count II, the Court held that Straker's "wholly conclusory" and "factually unsupported" allegation of racial discrimination was inadequate to state a claim under § 1985(3), but granted Straker leave to amend. *Id.* at 98-102. With regard to Count III, the Court held that "NYCTA cannot reasonably be expected to respond to [the count] in its present form," and directed Straker to provide a more definite statement. *Id.* at 103. With regard to Count IV, the Court denied the motion to dismiss. *See id.* at 103-04. With regard to Count V, the Court held that, although Straker, as a public employee, had failed to state a claim under federal labor law, he had adequately alleged a DFR claim under state law. *See id.* at 104-05.

On October 24, 2004, Straker sought to amend Counts II and III in a document entitled "Amendment to Counts." NYCTA moves to dismiss those reconstituted counts, arguing that they still do not state a claim upon which relief can be granted. In addition, TWU moves for judgment on the pleadings on Count V on the ground that Straker's DFR claim is barred by the statute of limitations.

## II.

In considering NYCTA's motion to dismiss, the Court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint," *Hayden v. County of Nassau*, 180

F.3d 42, 54 (2d Cir. 1999), and must "take as true all of the allegations contained in plaintiff's complaint and draw all inferences in favor of plaintiff." *Weinstein v. Albright*, 261 F.3d 127, 131 (2d Cir. 2001). "Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle him to relief." *Id.* (citations and internal quotation marks omitted). TWU's motion for judgment on the pleadings on Count V is evaluated under the same standards. *See Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

## A. Count II/§ 1985(3)

"The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (citing *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825 (1983)). "'The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.'" *United Bhd. of Carpenters*, 463 U.S. at 835 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

NYCTA argues that, even as amended, Count II fails to state a claim under § 1985(3). First, it argues that Straker has failed to correct the deficiency identified in

4

*Straker I*, that is, that he has failed to allege sufficient facts to demonstrate racial animus. Second, it argues that Straker's most recent amendment has created a new pleading defect in that he has failed to allege that two or more actors conspired to deprive him of his civil rights.

### 1. *Racial Animus*

Straker has alleged that he is African-American, *see* Am. Compl. ¶4, has described in detail what NYCTA did (requiring him to submit to stricter testing standards, using those standards to deem his failure to provide a urine specimen a "refusal," and then terminating him based on that refusal), and has alleged that those actions were taken "because of racial animus," Am. to Counts ¶ 3. He has also alleged that "similarly situated white counterparts were allowed to continue in their employment upon the submission of data from a treating physician," *id.* ¶ 5; the Court takes this allegation to mean that because Straker is black, NYCTA allegedly rejected his treating physician's opinion that there was a medical reason for his failure to produce a urine sample.

In *Phillip v. University of Rochester*, 316 F.3d 291 (2d Cir. 2003), the plaintiffs "allege[d] that they are African-Americans, describe[d] defendants' actions in detail, and allege[d] that defendants selected them for maltreatment 'solely because of their color,'" *id.* at 298; the Second Circuit held that "*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), compels us to conclude that these allegations are sufficient" to plead racial animus. *Id.* Having made similar allegations, Straker has adequately pleaded racial animus.

### 2. *Conspiracy*

As to NYCTA's second argument, the Court agrees that Straker has not

5

alleged a conspiracy to deprive him of his civil rights. While the prior version of Count II alleged that NYCTA's "employees ... together with [non-NYCTA] physicians Harris M. Naglar, M.D. and Avram M. Nemetz, M.D. engaged in conduct calculated to support a finding that plaintiff 'refused' to render a urine sample," Am. Compl. at 21, the current version alleges only that NYCTA "violated 42 U.S.C. § 1985(3) in that it subjected plaintiff to stricter testing standards" and "caused [Dr. Nagler] to recant his expert opinion by misrepresenting federal statutory law as a reason to change [his] expert opinion." Am. to Counts ¶ 1.

With Dr. Nagler transformed from alleged co-conspirator into unwitting victim of NYCTA's alleged misrepresentation, and Dr. Nemetz removed from the equation altogether, Count II now alleges conduct by a single entity – NYCTA. Under the intracorporate conspiracy doctrine, "there is no conspiracy [under § 1985(3)] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (citing *Girard v. 94th & Fifth Ave. Corp.*, 530 F.2d 66 (2d Cir. 1976)).

Moreover, Straker has not alleged that Drs. Nagler and Nemetz were motivated by racial animus; indeed, he affirmatively alleges that they were motivated by a desire to keep NYCTA's business. Section 1985(3), by contrast, requires that there be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind *the conspirators'* action.'" *Scott*, 463 at 835 (quoting *Griffin*, 403 U.S. at 102) (emphasis added). In other words, intentional discrimination must motivate the group. Where, as here, the

6

plaintiff alleges that only one conspirator was so motivated, the conspiracy does not fall within the scope of § 1985(3). *See Humphrey v. Demitro*, 931 F. Supp. 571, 582 (N.D. Ill. 1996) (holding that the absence of intentional race-based discrimination by some of the alleged co-conspirators "negates the presence of that factor as a group motivation"), *rev'd on other grounds by Humphrey v. Staszak*, 148 F.3d 719 (7th Cir. 1998).

In sum, Count II still fails to state a claim under § 1985(3). Further leave to amend is not warranted; Straker has already twice amended his complaint. In addition, as the Court noted in *Straker I*, there is no point in allowing leave to amend where the plaintiff's own allegations negate his claim, *see* 333 F. Supp. 2d at 97 (citing *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85 (2d Cir. 1998)); Straker's allegation that Drs. Nagler and Nemetz were motivated by a desire to keep NYCTA's business negates the possibility that they were motivated by racial animus.

**B. Count III/§ 1983**

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997). NYCTA does not dispute that it is a suable state actor for purposes of § 1983, *see Yang v. New York City Transit Auth.*, 2002 WL 576079, at *3 (E.D.N.Y. Apr. 16, 2002) (construing claim against NYCTA as § 1983 claim); *Roitman v. New York City Transit Auth.*, 1991 WL 81924, at *1 (E.D.N.Y. May 6, 1991) (same); it argues, however, that Count III fails to allege a violation of a federal right.

After alleging a contractual relationship between NYCTA and Affiliated

7

Physicians (a group of outside physicians to whom NYCTA referred Straker's case), Count III alleges, without elaboration, that NYCTA "deprived [Straker] of employment in violation of 42 U.S.C. § 1983." Am. to Counts ¶ 11.[2] While Count III does not expressly incorporate the allegation of intentional race discrimination contained in Count II, the Court assumes that Straker intends to allege that he was deprived of his employment based on his race. *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ("Federal pleading is by statement of claim, not by legal theory . . . . Factual allegations alone are what matters." (citations and internal quotation marks omitted)).

The allegation that NYCTA deprived Straker of his employment does not, standing alone, allege a violation of a federal right. As the Court explained in *Straker I*, such an allegation does not establish a violation of the Due Process Clause because even assuming that Straker's continued employment rose to the level of an interest protected by the clause, his other allegations demonstrate that he received due process. *See* 333 F. Supp. 2d at 96-97. Coupled with an allegation of intentional race discrimination, however, the allegation that NYCTA deprived Straker of his employment sufficiently alleges a violation of the Equal Protection Clause. *See Hazelwood School Dist. v. United States*, 433 U.S. 299, 309 n.15 (1977) (noting that "a public employer [is] subject to the command of [the Equal Protection Clause of] the Fourteenth Amendment not to engage in purposeful racial discrimination"); *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) ("To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government

---

[2]Count III also alleges that Affiliated Physicians violated § 1983 in the same manner; however, Affiliated Physicians is not a party to this suit.

actor intentionally discriminated against him on the basis of his race.").

## C. Count V/DFR Claim

TWU argues that the DFR claim embodied in Count V is barred by the statute of limitations. Under New York law, the statute of limitations for a public employee's DFR claim is four months. *See* N.Y. C.P.L.R. § 217(2)(a). The statute begins to run on the date "the employee or former employee knew or should have known that the breach has occurred, or [on] the date the employee or former employee suffers actual harm, whichever is later." *Id.*

Straker filed his complaint on April 10, 2003. This was approximately nine months after the union representative on the arbitration panel allegedly visited one of Straker's physicians on July 11, 2002, and "instruct[ed] the doctor not to cooperate," Am. Compl. ¶¶ 79, 87; it was also more than five months after the close of the arbitration proceedings on October 23, 2002. It was, however, less than four months after the arbitrators' January 11, 2003 Opinion and Award upholding the termination decision.

Straker does not dispute that he knew or should have known of the union's alleged breach by October 23, 2002, at the latest. At issue, then, is when Straker suffered actual harm.

There is little case law on what constitutes "actual harm" under § 217(2)(a). TWU cites decisions of the New York Public Employee Relations Board to the effect that "[w]aiting for the receipt of an unfavorable award does not toll the period of limitations," *United Fed'n of Teachers*, 325 PERB ¶ 4578 (2002), but these are not controlling. By contrast, in *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160 (2d Cir. 1989), the Second Circuit held

9

that

> a federal district court should not be called upon to consider a suit based in part on the claim that a union lawyer's preparation for or performance in an arbitration hearing was inadequate before the effectiveness of that representation can be measured. It is quite possible that, missing witness or inadequate cross-examination notwithstanding, the employee would prevail in the arbitration proceeding, perhaps obtaining reinstatement and back pay. In such a case, intervention by the district court would be unnecessary, superfluous and wasteful. We believe that requiring a district court to consider such a suit by a plaintiff who may yet prevail in the pending arbitration proceeding would be an intolerable drain on precious judicial resources.

*Id.* at 163. "Where there remains a possibility that the employee may yet prevail in the ongoing arbitration proceeding," the court "fail[ed] to see how a plaintiff could be expected to demonstrate [actual] injury." *Id.* Thus, in *Ghartey*, although the court recognized that "where a union refuses or neglects to assist a union member . . ., decides to stop assisting a member . . ., or acts against the interests of a member . . ., a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains," *id.* at 165, it contrasted those circumstances with a case in which the union "purport[s] to fulfill its duty of fair representation throughout an arbitration hearing process." *Id.*

While not exactly on point, *Ghartey* is instructive. The Second Circuit expressly noted that harm from a missing witness (such as Straker's physician) would be speculative until it resulted in an arbitration decision adverse to the plaintiff. *See id.* at 163 ("It is quite possible that, *missing witness* or inadequate cross-examination notwithstanding, the employee would prevail in the arbitration proceeding, perhaps obtaining reinstatement

and back pay." (emphasis added)). Similarly, common sense suggests that a union member could not maintain a DFR claim based on the union's interference with a witness until that interference had resulted in some concrete harm, namely, an adverse arbitration decision.

In sum, while Straker may have been on notice of the union's alleged breach earlier, the breach did not cause any actual harm until the arbitrators rendered their decision on January 11, 2003. Straker's complaint, filed less than four months later, is therefore timely.

### III.

NYCTA's Rule 12(b)(6) motion to dismiss is granted with respect to Count II, but denied with respect to Count III, which is construed as alleging a violation of the Equal Protection Clause. TWU's Rule 12(c) motion for judgment on the pleadings is denied. The case will proceed on Count III, as amended, Count IV and Count V.

**SO ORDERED.**

FREDERIC BLOCK
United States Senior District Judge

Brooklyn, New York
December 5, 2005